UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD WILLIAMS,                                    Case No. 08-10044

        Plaintiff,                               David M. Lawson
vs.                                                United States District Judge

PATRICIA CARUSO, NICK LUDWICH,                     Michael Hluchaniuk
DEPUTY WARDEN SCHOOLY,                             United States Magistrate Judge
CLEVELAND BOYD, M. BERGHUIS,
DR. SANTIAGO, MARILYN HARRIS,
CARMEN PALMER, D. MALLOT, JOHN
RUBITSCHUN, BARBARA SAMPSON,
CYNTHIA JOHNSON, GARY KASENAW,
RACHAEL JOHNSON, and KENNETH
ROMANOWSKI,

        Defendants.
_____/

**REPORT AND RECOMMENDATION
DEFENDANTS' MOTION TO DISMISS AND
MOTION FOR SUMMARY JUDGMENT (Dkt. 45)**

## I.    PROCEDURAL HISTORY

Plaintiff filed the present complaint on January 3, 2008.  (Dkt. 1).  Plaintiff

sought to proceed without prepayment of court fees and also sought the

appointment of counsel.  (Dkt. 2, 3, 5).  His request to proceed without

prepayment of fees was granted but his request for appointment of counsel was

denied.  (Dkt. 6,7).  On February 1, 2008, the case was referred to the undersigned

for all pretrial purposes.  (Dkt. 8).  In that the original copy of the complaint was largely illegible, plaintiff was ordered to file a legible copy, which he did on March 21, 2008.  (Dkt. 11, 12).  A second motion for the appointment of counsel was filed on April 2, 2008, and denied on April 8, 2008.  (Dkt. 14, 17).  On May 30, 2008, defendant Marilyn Harris filed an answer to the complaint.  (Dkt. 44).

On June 2, 2008, a motion to dismiss and motion for summary judgment was filed by all the defendants except Marilyn Harris and Dr. Santiago.  (Dkt. 45). Plaintiff filed a pleading that was styled as an objection to the answer of defendant Harris and a response to the motion to dismiss on July 7, 2008.  (Dkt. 54).  Dr. Santiago filed an answer to the complaint on July 18, 2008.  (Dkt. 51).  Plaintiff filed a second response to the motion to dismiss on July 21, 2008.  (Dkt. 58).

## II.    FACTUAL BACKGROUND

The relevant facts of this case are largely undisputed.  Plaintiff was convicted of an offense in Michigan and was sentenced on June 13, 2000, to a term of imprisonment of eighteen months to fifteen years.  (Dkt. 45, p. 2).  At the time of his initial release on parole, July 17, 2003, he was transferred to Alabama for service of a criminal sentence imposed in that state.  *Id*.  A part of plaintiff's Michigan sentence was the payment of approximately $47,000 in restitution.  *Id*. Plaintiff was initially placed on parole until July 17, 2005.  Plaintiff completed the

Alabama sentence before the expiration of his Michigan parole and Alabama authorities agreed to provide parole supervision of plaintiff based on the fact that plaintiff initially planned on living in Alabama following release from custody there. *Id*.   Plaintiff's parole supervision in Alabama began on February 28, 2005. (Dkt. 1, p. 16, ¶ 5). On March 4, 2005, Michigan authorities authorized the transfer of supervision to Alabama on an Interstate Commission for Adult Offender Supervision form.  The form noted that supervision was to be terminated on July 17, 2005, and also noted that the restitution had to be paid or Michigan "will extend his parolee [sic] to his max of 8/14/2012."  (Dkt. 45, Ex. 2).

Plaintiff's parole agent in Alabama was named Armstrong. In early July 2005, plaintiff appeared before Parole Agent Armstrong and was told that Armstrong had communicated with Michigan authorities and had heard nothing back.  As a result, Armstrong said he was going to discharge plaintiff from parole on the scheduled date of July 17, 2005, and apparently did terminate his supervision on that date.  (Dkt. 12, p. 16, ¶ 8).   The documentation associated with this transaction indicates that Parole Agent Armstrong completed a "Case Closure Notice" on July 12, 2005, indicating the case would be closed on July 17, 2005.  That form was signed by the Compact Administrator on July 28, 2005, and the form is stamped "received" by the MDOC on August 5, 2005.  (Dkt. 1, Ex. H).

Defendants say that, on July 20, 2005, three days after the termination of his supervision in Alabama, Michigan Parole authorities extended plaintiff's parole until August 4, 2012, due to the non-payment of restitution. (Dkt. 1, Ex. J). Plaintiff states that he was not made aware of the extension of his parole supervision although Michigan Parole authorities say they notified Alabama authorities. The Parole Hearing Officer, Gary M. Kasenow, found, in his hearing summary dated January 18, 2007, that a notice of the extension of plaintiff's parole was sent to Alabama authorities, "on or about" July 20, 2005, but the record in this case does not include a document supporting that statement. (Dkt. 45, Ex. 8). However, the record does include a "Compact Action Request" dated October 25, 2005, from Michigan Parole Agent Cynthia N. Johnson to Alabama authorities requesting that Alabama authorities inform plaintiff that he still owes the restitution amount and if "he/she [does] not pay the restitution by the parole discharge date, his/her parole will be extended to the maximum term allowed." (Dkt. 1, Ex. I). By October of 2005, plaintiff says he was not in Alabama because on September 15, 2005, plaintiff's employment transferred from Alabama to Michigan and he moved back to Michigan. (Dkt. 1, p. 17, ¶ 10).

Apparently, no further action is taken by Michigan Parole authorities until they issued a parole warrant on June 26, 2006, based on a parole violation of May

22, 2006, which was the date of plaintiff's arrest by Macomb County law

enforcement officers for a new offense. (Dkt. 45, Ex. 4). Plaintiff pleaded guilty

to the Macomb County offense on June 19, 2006, (Dkt. 1, Ex. D), and was taken

into custody by state authorities regarding a parole violation. The record is

somewhat confusing as to the exact date plaintiff was taken into state custody

because, at one point, plaintiff appears to say it was on June 20, 2006 (Dkt. 12, p.

10, ¶ 1) while at another point he appears to say it was June 28, 2006. (Dkt. 12, p.

17, ¶ 12). For purposes of this motion, it will be assumed that he was taken into

custody on June 20, 2006. Plaintiff asserts, and defendants do not contradict the

assertion, that he had no notice of the extension of his parole and believed he had

been discharged from parole on July 17, 2005, while residing in Alabama. He

claims that he first became aware of the parole extension when he was arrested for

a parole violation in June of 2006. (Dkt. 12, p. 10, ¶¶ 4, 6).

     Plaintiff states that, while being processed at a Jackson prison, where he had

been taken initially following his arrest on the parole warrant, a clerk noted that

his Basic Information Sheet said "Terminated Record" and the clerk called Deputy

Warden Scott Schooley who, after examining the record, told plaintiff that the

"revocation officer will handle the issue." (Dkt. 12, p. 17, ¶¶ 13-14).

Plaintiff was arraigned on the parole violation charge on July 20, 2006, at which time he reasserted his claim that he had been discharged from parole in July of 2005.  (Dkt. 12, p. 10, ¶ 6).  Plaintiff normally would have been required to have his violation hearing conducted within 45 days of becoming "available" to parole authorities.  MCL 791.240a.  On July 26, 2006, plaintiff met with his attorney and waived the right to have the hearing held within 45 days because he was "waiting for additional documents to be sent to [him] for [his] hearing."  (Dkt. 45, Ex. 7).  The parole revocation hearing had been scheduled for August 1, 2006, and plaintiff, with counsel, appeared before ALJ Gary Kasenow and confirmed the waiver of the 45 day period in light of the apparent need for additional documents. ALJ Kasenow concluded the hearing by advising plaintiff and his counsel that he would schedule the next hearing when he heard from plaintiff or counsel that they were ready to proceed.[1]  The ALJ memorialized the hearing in a written document that reflected both the adjournment of the revocation hearing at plaintiff's request and the need for the last report from the Alabama agent.  (Dkt. 1, Ex. F).

---

[1] An audio record of the August 1, 2006, hearing was made and has been supplied to the court and to plaintiff.  The undersigned has listened to the recording of that hearing, as well as the hearing on November 14, 2006, and the described events are based on the contents of the recording as determined by the undersigned.

The revocation hearing resumed on November 14, 2006.  At that time, ALJ Kasenow summarized the status of the case and listed some of the irregularities associated with plaintiff's situation.  The ALJ heard arguments from counsel and from plaintiff personally and, while noting there were issues associated with the extension of plaintiff's parole, stated that he did not believe he had any authority to rule on the issue of the propriety of that extension by the parole board.  The ALJ determined that, given plaintiff's lack of notice of that extension, it would not be fair to find a violation associated with his failure to report after July 17, 2005, but that those events would not excuse the commission of a new crime while on parole.  The ALJ invited counsel and plaintiff to submit additional authority regarding his authority to address the extension question and put the hearing over until November 30, 2006, which was the next date that counsel was available.[2]  ALJ  Kasenow made findings of fact and recommendations to the Parole Board.  His report of the hearings, dated January 18, 2007, characterizes plaintiff's case as "replete with administrative errors." (Dkt. 45, Ex. 8).  The report went on to summarize the history of plaintiff's case including the fact that, after being

_____

[2] The events described at the November 14, 2006, hearing are based on the audio recording of that hearing submitted by defendants and listened to by the undersigned.  No recording of the November 30, 2006 hearing was provided.

notified on August 5, 2005 of plaintiff's parole discharge in Alabama "no efforts were made by Michigan to request Alabama to locate parolee and notify him that he was still on parole and then to issue a warrant to take him back into custody." *Id*. The ALJ stated that plaintiff had a "right to rely upon the actions of the Alabama and Michigan Corrections Authorities and believe that he was off parole" but that a "revocation hearing is not the forum to decide and does not have jurisdiction to rule on whether a parole was lawfully extended." *Id*. The report further noted that the "Michigan Parole Board extended subjects parole after his discharge date and he is therefore on parole until 8-4-2012 and relief to parolee for that action would have to come from Circuit Court." *Id*.[3] Believing he did not have the jurisdiction to rule on the lawfulness of the extension issue, the ALJ concluded that plaintiff had violated his parole by committing a new crime. *Id*.

The Parole Board, acting on the findings of the ALJ, reinstated plaintiff's parole "contingent upon the successful completion of [Intensive Reentry Unit Program] processing." (Dkt. 1, Ex. N). This action of the Parole Board was signed

_____

[3] Michigan law would indicate that the appropriate remedy for someone who seeks to compel the parole board to comply with a statutory duty is a writ of mandamus. *Morales v. Michigan Parole Board*, 260 Mich.App. 29, 41 (2004).

by two Parole Board members on January 29, 2007 and January 31, 2007, respectively, and "mailed" on February 20, 2007.  *Id.*

While at the Jackson facility (RGC) on December 28, 2006, plaintiff filed a step I grievance (grievance identifier RGC 07-01-07-28g) complaining of a violation of his due process rights relating to the extension of his parole in 2005 and the subsequent developments.  (Dkt. 1, Ex. M).  The response from the MDOC was, in essence, that they had no jurisdiction over the parole revocation process.  Plaintiff appealed through step II and step III and received the same response with the step III response being issued on May 3, 2007.

On January 14, 2007, plaintiff was transferred from the Jackson facility to the E.C. Brooks Correctional Facility in Muskegon.  On that same day, plaintiff admits that he had a "nervous breakdown," which he attributes to a sexual assault he was the victim of while in the Jackson facility.  (Dkt. 12, p. 25, ¶¶ 59-60). Plaintiff was transferred to "Riverside Mental Health Hospital" on February 28, 2006, for the purpose of undergoing mental health treatment.  (Dkt. 12, p. 11, ¶ 11).[4]  As a result of the mental health treatment, plaintiff was unable to complete

---

[4] It is unclear whether plaintiff filed a grievance regarding this transfer.  At one point in the complaint, when plaintiff was describing the underlying events, he referred to his transfer to Riverside Correctional Facility (RCF) and, in that context, plaintiff claims he filed a grievance regarding the transfer.  (Dkt. 12, p.7,

the reentry program and his parole was "suspended" on March 29, 2007. (Dkt. 1, Ex. P). After concluding his mental health treatment, plaintiff was transferred to the Brooks facility on April 24, 2007. (Dkt. 12, p. 11, ¶ 15). Plaintiff stated that he had a hearing, via video teleconference, on May 6, 2007 with the Parole Board and the Board recommended, again, that plaintiff go through the re-entry program. (Dkt. 12, p. 12, ¶ 16). The written statement of the Board issued on May 16, 2007 indicates that plaintiff's parole decision was being "deferred." (Dkt. 1, Ex. Q). He remained at the Brooks facility until June 15, 2007, when he was transferred back to the Riverside facility. (Dkt. 45, p. 5). While the record is not clear when, at some point, plaintiff was transferred back to the Harrison facility where he was incarcerated on February 19, 2008, when he was released on parole to Macomb County authorities for service of his state sentence from the conviction in 2006 that had given rise to the parole revocation proceedings. (Dkt. 45, Ex. 10). As of that action taken by the Parole Board, plaintiff was to be on parole until August 19, 2009. *Id*.

---

¶ 17). The complaint does not mention the grievance again. A largely unintelligible grievance form dated March 5, 2007, was attached to the original complaint but unfortunately it is impossible to determine what the nature of the grievance was due to the very poor quality of the copy. (Dkt. 1, Ex. U). Defendants claim that they have no record of the grievance. (Dkt. 45, p. 6).

## III.   PLAINTIFF'S COMPLAINT

While difficult to follow at times, plaintiff's complaint is primarily related to the fact that his parole was extended, according to him, after he was discharged from parole in Alabama on July 17, 2005, and without any notice to him being given.  The other identifiable bases of  causes of action are his transfer, while in the custody of the MDOC, to a different institution for the purpose of mental health treatment without notice and hearing, and his claim that his parole revocation was not held within 45 days.[5]

The vast majority of defendants named in this lawsuit played some role in the chain of events associated with his extended parole and subsequent parole violation proceedings.  Plaintiff's allegations of misconduct on the part of most of these individual defendants is that they knew about the issue regarding his parole

---

[5] Defendants apparently believe that plaintiff claimed that his transfer to Riverside was in retaliation and this claim stated a First Amendment claim based on that.  While plaintiff did use the word "retaliation" on two occasions in his corrected complaint (Dkt. 12, pp. 7, 26) the significance of that word is far from clear in the context in which it was used, and such a claim was not mentioned in his "claim for relief" (Dkt. 12, pp. 28-29) or in his responses to the motion to dismiss. (Dkt. 54, 58).  Such a vague use of the term "retaliation" does not state a claim for retaliation in First Amendment terms.

extension and did nothing about it.  All defendants are sued in their individual capacity.[6]

Plaintiff seeks compensatory and punitive damages as well as injunctive and declaratory relief, including (1) a declaration that defendants violated plaintiff's state and federal constitutional rights, (2) an order releasing plaintiff from the custody or supervision of the MDOC or the Parole Board, (3) an order to improve the training for various state employees who work in the areas that plaintiff has had to deal with, and (4) an order that the MDOC and Parole Board not take any retaliatory action against plaintiff for seeking relief in the courts.  (Dkt. 12, pp. 30-31).

## IV.   DEFENDANTS' MOTION TO DISMISS

### A.   Failure to Exhaust Administrative Remedies

Defendants claim that plaintiff did not file a timely grievance with respect to the issue of the propriety of being taken into custody by the action of the Parole Board in June of 2006.  Defendants say that the seven day time period for filing

---

[6] Plaintiff's "Corrected Complaint" consists of five unnumbered pages and 33 numbered pages.  The first unnumbered page indicates that the three categories of defendants (MDOC-Officials, Michigan Parole Board and MDOC-Mental Health) are being sued in their "individual capacity."  That same limitation is repeated on the fifth unnumbered page and on numbered page 32.  (Dkt. 12).

grievances was long expired by the time plaintiff filed his grievance on December 28, 2006.  Additionally, defendants say that the grievance was defective because it did not name any individuals responsible for the alleged wrongdoing and, with respect to any other claims, plaintiff did not file any grievance and therefore has failed to exhaust his administrative remedies regarding any other claims.  (Dkt. 45, pp. 7-8).  Plaintiff responded to defendants' motion but did not specifically address the exhaustion issue raised by defendants.  (Dkt. 54, 58).

> B.   <u>Declaratory and Injunctive Relief</u>

Defendants argue that any declaratory or injunctive relief requested by plaintiff is moot because he is no longer in the custody of the MDOC. Defendants' argument addresses declaratory relief in the context of releasing plaintiff from MDOC custody but does not address the other forms of injunctive or declaratory relief that plaintiff has requested.  (Dkt. 45, p. 8).  Plaintiff did not respond specifically to this argument raised by defendants.  (Dkt. 54, 58).

> C.   <u>Claims Relating to Lawfulness of Re-Incarceration</u>

Defendants assert that plaintiff cannot seek relief under 42 U.S.C. § 1983 for the wrong about which he complains, an improper parole extension, because habeas corpus is the exclusive remedy for a prisoner challenging the length of his incarceration.  Defendants contend that *Heck v. Humphrey*, 512 U.S. 477 (1994)

stands for the proposition that any civil rights action that calls into question the lawfulness of the plaintiff's confinement must be predicated on a separate habeas action determining the confinement unconstitutional.  Although defendants do not maintain that plaintiff has filed a federal habeas action based on state custody, they argue that a person who does file such a habeas action, under 28 U.S.C. § 2254, must exhaust state court remedies before coming to federal court.  (Dkt. 45, pp. 9-10).  Plaintiff did not specifically respond to this argument in his response to defendants' motion.  (Dkt. 54, 58).

     D.    <u>Personal Involvement</u>

Defendants Caruso, Romanowski, Rubitschun, Boyd, C. Johnson, Ludwick, Palmer and Schooley contend that, in order to establish liability under § 1983, plaintiff must show that they had some personal involvement in the conduct that gave rise to the cause of action.  These defendants say that they were named in this suit because they had supervisory responsibilities over individuals who had direct involvement with plaintiff, which is not sufficient to hold them responsible under § 1983.  (Dkt. 45, pp. 10-12).  Plaintiff did not specifically address this argument in his responses to the motion.  (Dkt. 54, 58).

E.      Equal Protection Violation

Defendants contend that plaintiff does not have a constitutional or inherent right to a parole hearing and is not a member of a protected class so, therefore, he has not stated an Equal Protection violation.[7]  (Dkt. 45, pp. 12-13).  Plaintiff did not specifically respond to this argument in his response to the motion to dismiss. (Dkt. 54, 58).

F.      First Amendment Retaliation Claim

Regarding what defendants describe as plaintiff's possible claim of retaliation, defendants argue that the transfer about which plaintiff complains was not connected to any exercise of a protected right by plaintiff, and therefore, there is no First Amendment violation.  (Dkt. 45, pp. 13-14).  As noted earlier, the undersigned does not believe that plaintiff has stated a First Amendment retaliation claim due to the vagueness of his complaint but defendant has raised this argument.  Plaintiff did not specifically respond to this claim in his response to the motion.  (Dkt. 54, 58).

---

[7] Plaintiff did mention a possible Equal Protection violation in violation of the corrected complaint but that claim was too vague to actively rise to the level of actually asserting such a claim.  *Lielard v. Shelby County Board of Education*, 76 F.3d 716, 726 (6th Cir. 1996).

Report and Recommendation
Motion to Dismiss/Summary Judgment
*Williams v. Caruso*; 08-10044

G.     Absolute Immunity

Defendants Rubitschun, Sampson, Kasenow and Johnson submit that they are entitled to absolute immunity.  While their roles differ, they all claim that their respective involvement in the parole revocation process entitles them to immunity from suit and that they should be dismissed from the case regardless of the underlying circumstances.  (Dkt. 45, pp. 14-15).  Plaintiff did not specifically respond to this argument in his response to defendants' motion.  (Dkt. 54, 58).

H.     Qualified Immunity

Defendants argue that, to the extent that they are not entitled to absolute immunity, they are all entitled to qualified immunity in that plaintiff has not demonstrated a constitutional violation which is a requirement of establishing liability for a claim under § 1983.  (Dkt. 45, p. 15).  Plaintiff did not specifically respond to this argument in his response to the motion.  (Dkt. 54, 58).

I.     Forty-five Day Limitation Period

Plaintiff claims that he was denied his right to have his parole revocation hearing held within 45 days of becoming available to the Parole Board.  This right, plaintiff asserts, is based on his due process rights that are actionable under § 1983.  (Dkt. 54, affidavit in opposition to motion, pp. 5-7).  Defendants claim

that plaintiff waived any right to have the parole revocation hearing held within 45

days.  (Dkt. 45, p. 12).

## V.      ANALYSIS AND CONCLUSIONS

      A.      <u>Standard of Review</u>

           1.      Motion To Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell*

*Atlantic Corp. v. Twombly*, 500 U.S. 544, 127 S.Ct. 1955, 1964 (2007), quoting,

*Conley v. Gibson*, 355 U.S. 41, 47 (1957).  A plaintiff is also obliged "to provide

the grounds of his entitlement to relief," which "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502, F.3d 545, 548

(6th Cir. 2007), quoting, *Twombly*, 127 S.Ct. at 1964-65 (citations and quotation

marks omitted).

And, while a complaint need not contain "detailed" factual allegations, its

"[f]actual allegations must be enough to raise a right to relief above the

speculative level on the assumption that all the allegations in the complaint are

true." *Id.*, quoting, *Twombly*, 127 S.Ct. at 1965 (internal citation and quotation marks omitted); *see also, League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

The Sixth Circuit recently recognized that in *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496, 503 n. 6 (6th Cir. 2008) (internal citations and quotation marks omitted). The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2). Such is not the case here. Thus, when applying *Twombly*, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 *U.S.* 519 (1972), and accept plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 127 S.Ct. at 2200 (Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint.).

           2.       Motion for Summary Judgment

       Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment.  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the

light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 127, 127 S.Ct. 1774, 1776 (2007).

B.    Exhaustion of Administrative Remedies

In making a claim under § 1983, a prisoner-plaintiff must first comply with an available administrative procedure in the prison. 42 U.S.C. § 1997(e)(a). *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2384-85 (2006). The failure to exhaust administrative remedies is an affirmative defense that must be raised and proved by a defendant. *Jones v. Bock*, 549 U.S. 199 (2007).

Certain exceptions to the exhaustion rule exist.  One of those exceptions is based on the circumstances where filing the grievance would be futile.  *Fazzini v. Northwest Ohio Correctional Center*, 473 F.3d 229, 236 (6th Cir. 2006).  A failure to exhaust may be excused where pursuing that remedy would be futile or a remedy that would provide the requested relief is not available.  *Id.*  In the present case, the response to the grievance plaintiff filed on December 28, 2006, clearly indicated that the normal MDOC grievance procedure had no jurisdiction over parole violations or procedures associated with actions of the parole board.  Under these circumstances, the futility of filing a grievance by plaintiff is obvious and any delay in filing it should be excused.  Additionally, the grievance was not rejected because it was untimely.  While plaintiff is obligated to follow the required procedures, if the grievance is not rejected administratively because it is untimely prison officials should be considered to have waived that issue for purposes of court review.  *Hawley v. Gilbert*, 2008 WL 607331 (W.D. Mich. 2008).

A second potential basis for excusing an untimely grievance is the doctrine of equitable tolling.  Equitable tolling may be appropriate under circumstances where the plaintiff lacked actual or constructive knowledge of the filing requirement, where the plaintiff diligently pursued his rights, where there was no

prejudice to the defendant and where the plaintiff was reasonably ignorant of the particular legal requirement.  *Anthony v. Gilman*, 2008 WL 115531 (W.D. Mich. 2008).  In the present case, it would appear that plaintiff was aware of the filing deadline but he did pursue, diligently, the issue relating to the extension of his parole.  He raised it when first processed for the violation and made an issue out of it when brought before an ALJ regarding the violation.  Defendants were not prejudiced by the delay in any identified way, and it was only after the parole revocation route (which he was instructed to pursue) failed, that plaintiff attempted to vindicate his rights through the grievance process.  The limitation period for filing grievances should be equitably tolled under these circumstances and this would serve as a second, independent basis, for excusing an untimely grievance relating to the extension/revocation issue.

The only other grievance in controversy in this case is the grievance plaintiff says he filed on March 5, 2007, related to his transfer to the Riverside Correctional Facility.  Although defendants say that they have no record of that grievance, that only creates a factual question, which prevents this issue from being resolved at this stage of the proceedings.  Additionally, the copy of the grievance allegedly filed is of such poor quality it cannot be determined if the grievance properly addressed the matter about which plaintiff complains.  (Dkt. 1,

Ex. U).  If it ultimately turns out that the grievance was filed, the fact that

defendants did not respond to it does not mean that it has not been exhausted

administratively.  *Fazzini*, 473 F.3d at 234.  Defendants have not met their burden

proving that plaintiff has failed to exhaust his administrative remedies with respect

to his claim arising from the transfer to the Riverside Correctional Facility without

a hearing.

      C.    <u>Declaratory and Injunctive Relief</u>

Plaintiff is no longer incarcerated by the MDOC.  (Dkt. 45, p. 5).[8]  Any

relief requested by plaintiff relating to being in the custody of the MDOC would

be moot given plaintiff's apparent release from their custody on February 19,

2008.  However, there are remaining aspects of plaintiff's request for relief that

were not rendered moot by plaintiff's release from MDOC custody.  Plaintiff

remains on parole and is, therefore, subject to the jurisdiction of the Parole Board.

---

[8] Defendants assert that plaintiff was "re-paroled" on February 19, 2008, to
the custody of the Macomb County Sheriff for service of the six month state
sentence that plaintiff was given in June of 2006 and that plaintiff's parole was
scheduled to last until August 19, 2009.  (Dkt. 45, p. 5).  Plaintiff did not contest
the information contained in defendants' pleadings dated June 2, 2008.  Plaintiff's
current status is unclear but it appears that as of the date of this report and
recommendation, plaintiff is still subject to the jurisdiction of the Parole Board.

However, all the defendants in this case are sued in their individual capacity and it is not clear that plaintiff can obtain the type of injunctive relief he is requesting under those circumstances.  *See Section 1983 Litig. Claims & Defenses* § 9.01, citing, *County of Sacramento v. Lewis*, 523 U.S. 833, 840 n. 4 (1998); *Mumford v. Zieba*, 4 F.3d 429 (6th Cir. 1993).  "Claims for injunctive and declaratory relief seek to bring about changes in governmental operations, and therefore, must be asserted in an official capacity action or, when permitted, in an action against a governmental entity."  *Id.*

D.     Claims Relating to Lawfulness of Re-Incarceration

In *Heck*, the Supreme Court considered a § 1983 claim for damages by a state prisoner premised on the assertion that his conviction was invalid.  The Court concluded that a § 1983 claim could not be maintained when the plaintiff's conviction had not been set aside in some appropriate manner.  The basis of the Court's decision was that, out of concern for "finality and consistency," the Court did not want to permit another vehicle for collateral attack of a criminal conviction.  Such attacks must come through the appropriate remedies provided for in state court or through a federal habeas corpus action.  *Edwards v. Balisok*, 520 U.S. 641 (1997), extended the basic principle of *Heck* to disciplinary proceedings in a prison.  That is to say, the *Edwards* court determined that a

§ 1983 action seeking damages relating to a prison disciplinary proceeding, under such circumstances that would necessarily imply the invalidity of the punishment imposed (loss of good time credit), is not cognizable under § 1983. *Id.*

Following *Edwards*, the application of *Heck/Edwards* became more complicated with the Supreme Court's decision in *Spencer v. Kemna*, 523 U.S. 1 (1998). *Spencer* was a state habeas case that addressed the standing of a former prisoner to challenge the parole revocation procedure that had been employed in his case. The majority opinion was that the "in custody" requirement of a habeas action is determined as of the time the petition is filed but that a person who has been released from custody must still meet a "collateral consequences" threshold to satisfy Article III's injury-in-fact requirement to have standing to file a habeas action. The court noted that an "incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement." *Id.* at 7-8. In response to an issue raised by petitioner in *Spencer*, the majority said that a § 1983 action would not be barred under *Heck* if the claim related only to the procedure used in the parole revocation, rather than for reaching the wrong result. *Id.* at 17. However, a four justice concurring opinion went so far as to suggest that once a prisoner is released from "custody," the *Heck* decision and its favorable-termination requirement "have nothing to do with

[petitioner's] right to any relief" under § 1983.  *Id*. at 21.  Defendant asserts that, in essence, plaintiff was "in custody," based on the parole revocation, at the time he filed this complaint and, therefore, the *Heck* favorable termination requirement bars plaintiff's claims because plaintiff seeks to set aside the parole revocation proceeding.

The issue before the Court regarding this particular aspect of defendants' motion for summary judgment is whether the principle of *Heck/Edwards* bars plaintiff's cause of action under § 1983.  In *Powers v. Hamilton County Public Defendant Comm'n*, 501 F.3d 592 (6th Cir. 2007), the court addressed the question of whether the plaintiff could maintain a § 1983 claim relating to whether he was denied the opportunity to have an indigency hearing prior to being sent to jail when he was unable to pay a fine for the traffic offense of which he was convicted.  The defendant in that case contended that plaintiff's suit was barred because of the *Heck* favorable-termination requirement in that the underlying conviction had not been invalidated.  Petitioner argued that because he was no longer incarcerated, he could not meet the in-custody requirement of a habeas case and, additionally, he was not challenging the legitimacy of either his conviction or sentence but merely the procedure employed regarding the indigency hearing so he was not directly challenging the conviction.  The Court in *Powers* noted a split in

the circuits regarding "the interplay between *Heck* and *Spencer* and ultimately

sided with those circuits that "have held that *Heck's* favorable-termination

requirement cannot be imposed against  § 1983 plaintiffs who lack a habeas option

for the vindication of their federal rights."  *Id*. at 602-03.

While not presently in custody as a result of the parole violation, plaintiff is

still subject to parole and presumably will be subject to parole for a period of time.

Applying that test to the present situation, the undersigned concludes that plaintiff

would be eligible for habeas jurisdiction and *Heck/Edwards* bars the present suit.

*See Humphrey v. U.S. Probation Dept.*, 2000 WL 876773 (6th Cir. 2000).

A second exception to the application of the *Heck/Edwards* favorable-

termination requirement is where the § 1983 action relates only to the procedure

associated with the alleged wrongful conduct and not the result of the wrongful

conduct.  *Powers*, 501 F.3d at 603.  In the present case, plaintiff seeks to have the

**results** of the parole violation "suspended"and, therefore, it is clear that he is

challenging the result of the proceedings, not just some procedural aspect of the

proceedings.

Based on this analysis, granting relief to plaintiff necessarily implies the

invalidity of the parole revocation proceedings of which plaintiff was convicted

and plaintiff's suit is barred under the *Heck/Edwards* rule.  As indicated above,

neither of the exceptions to the application of the *Heck/Edwards* rule apply in these circumstances.  It is recommended that summary judgment be granted in defendants' favor with respect to the parole extension/revocation claim in light of this conclusion.

     E.     *Respondent Superior* Liability

Liability in a § 1983 action cannot be based on a theory of *respondeat superior*.  *See Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978).  "[T]he mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability."  *Id*. at 694 n. 58, citing, *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976).  As the Sixth Circuit has stated:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995), quoting, *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Several cases from the Sixth Circuit provide guidance on a supervisory liability claim.  For example, the court has stated that "[p]laintiff must prove that [the supervisor defendants] did more than play a passive role in the alleged violations or show mere tacit approval of the goings on.  Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (internal and external citations omitted).  Furthermore, the Sixth Circuit has stated:

> Supervisor liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.

*Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002), quoting, *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). Also, the Court has held that where the defendants' "only roles ... involve the denial of administrative grievances or the failure to act ... they cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[L]iability

under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Id.* at 300, citing, *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). Claims that are based simply on the denial of a grievance do not state a claim of constitutional dimension. *See Martin v. Harvey*, 2001 WL 669983, *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee*, 199 F.3d at 300) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated ... in the claimed ... acts[ ]."); *Weaver v. Toombs*, 756 F.Supp. 335, 337 (W.D. Mich. 1989) ("The mere fact that these defendants found plaintiff's ... grievance concerning the seizure to be without merit is insufficient to state a claim against them."). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). "[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a

plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

Plaintiff's allegations against defendants Caruso (Dkt. 12, p. 3, ¶ 4), Romanowski (Dkt. 12, p. 7, ¶ 19), Rubitschun (Dkt. 12, p. 3, ¶5), Boyd (Dkt. 12, p. 5, ¶ 13), Cynthia Johnson (Dkt. 12, p. 3, ¶ 6), Ludwick (Dkt. 12, p. 4, ¶ 8), Palmer (Dkt. 12, p. 7, ¶ 17), Berghuis (Dkt. 12, p. 6, ¶ 14), Mallot (Dkt. 12, p. 7, ¶ 18) and Schooley (Dkt. 12, p. 4, ¶ 9) fall into one of the above described categories with respect to the parole extension claim as well as the transfer for treatment claim. As a result, plaintiff has failed to state an actionable cause of action against them and the complaint should be dismissed pursuant to Rule 12(b)(6).

F.    Absolute Immunity

Plaintiff alleges in his complaint that defendant John Rubitschun was "chairman" of the "Michigan Pardons and Parole Board" during relevant periods of time and that he allowed and promulgated law and procedure and that he was "aware" that the Parole Board was not following proper procedures. (Dkt. 12, p. 3, ¶ 5). Plaintiff further alleges that Barbara Sampson was a Parole Board member during relevant periods of time, and that she signed an invalid parole extension

order in July of 2005, which did not have a seal or a date stamp that would verify the order. Plaintiff also states that defendant Sampson was the "chairperson" during plaintiff's revocation proceedings and did not "afford" him his "procedural due process rights." (Dkt. 12, p. 4, ¶ 7). Defendants state that they are members of the Parole Board, consistent with plaintiff's allegations, and it is clear that they are being sued with respect to conduct engaged in as part of their official duties associated with the Parole Board.

Defendants Rubitschun and Sampson say they are immune from suit because the allegations involve their duties on the Parole Board. In *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997), the Court determined that judges, when performing judicial functions, are entitled to absolute immunity from suits for money damages. The Sixth Circuit has extended the scope of that immunity to state boards that perform adjudicatory functions. *Watts v. Burkhart*, 978 F.2d 269, 278 (6th Cir. 1992). Other circuits have included parole board officials as being within the coverage of judicial immunity although apparently the Sixth Circuit has not done that directly. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999); *Walrath v. United States*, 35 F.3d 277, 281 (7th Cir. 1994); *Homes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005); *Fig v. Russell*, 433 F.3d 593, 598 (8th Cir. 2006). District courts within this circuit have found parole board members

entitled to absolute immunity, citing, *Montero*.  *Bringard v. Caruso*, 2008 WL 1776974, *5  (W.D. Mich. 2005).  The Sixth Circuit has cited *Montero*, in an unpublished opinion, with favor although not specifically for the question of whether parole officers are entitled to immunity.  *Massey v. Stosberg*, 2005 WL 1432946 (6th Cir. 2005).  The common law doctrine of absolute immunity covers money damages.  *Barrett*, 130 F.3d at 254.  In § 1983 cases, the immunity includes immunity from injunctive relief where a declaratory decree was violated or declaratory relief is not available.  *Bringard, supra*.  Plaintiff has not contended that declaratory relief is unavailable in the present case, so the immunity that is properly applied to defendants Rubitschun and Sampson includes both money damages and injunctive relief.

Defendant Kasenow also asserts that he is entitled to absolute immunity, but his circumstances are slightly different that Rubitschun and Sampson in that Kasenow is an administrative law judge rather than a member of the Parole Board. Kasenow conducted a quasi-judicial hearing regarding whether plaintiff had violated his parole and his opinion, that there had been a violation, was adopted by the Parole Board.  Whatever differences there are between Kasenow and Rubitschun or Sampson, the differences do not amount to a significant distinction with respect to the application of absolute immunity.  *Watts, supra*.  All three

defendants were engaged in the common functions of a parole board and all three are entitled to the same level of immunity.

Defendant Rachel Johnson also submits that she is entitled to absolute immunity. Plaintiff alleges in his complaint that defendant Rachel Johnson "was acting in the capacity as parole field's [sic] agent prosecutor for the parole board" and that she did not "afford the plaintiff his due process rights procedurally." (Dkt. 12, pp. 5, 12). Defendant asserts that she "acted in a capacity functionally comparable to a prosecutor." It is not clear from the pleadings or the exhibits the precise dates on which this defendant would have performed her function, which she claims was "comparable to a prosecutor," but it is assumed that it was on November 14 and 30, 2006, when plaintiff was given a hearing on the merits of his parole violation. Neither party fundamentally disputes the role that defendant played in this matter in that both parties characterize her role as that of a "prosecutor."[9]

---

[9] Plaintiff alleges that defendant Rachel Johnson was a field agent prosecutor for the Parole Board, but argues that she was not certified or licensed as an attorney or paralegal. Just as judicial immunity is available to someone serving in a judicial capacity without regard to whether that person is a lawyer, someone serving as a prosecutor maybe protected by immunity without regard to whether that person is a lawyer. It is the functional test of what the person is doing, not the educational background of the person, that determines whether immunity protects them.

Defendant Johnson cites the case of *Nelson v. Balazic*, 802 F.2d 1077 (8th Cir. 1986) in support of her claim for absolute immunity.  There, the court determined that members of the parole board were entitled to absolute immunity because they were participating in a quasi-judicial function.  However, a parole officer defendant, who only completed a report regarding how the plaintiff might have violated his parole, performed a function akin to that of a police officer and would only be considered for qualified immunity, not absolute immunity.  *Nelson* does seem to support defendants' claim for absolute immunity.

In *Holloway v. Brush*, 220 F.3d 767 (6th Cir. 2000), the Sixth Circuit addressed the immunity of a social worker who had participated in the judicial process of removing a child from the home of its mother and was subsequently sued by the mother under § 1983.  While noting that a prosecutor, who functions as a prosecutor, is entitled to absolute immunity, the Court examined the role of the social worker and concluded that she did not evaluate and present evidence, control testimony, function as an advocate, or otherwise play a role that was intimately associated with the judicial process.  Without performing functions of this nature the social worker was not entitled to absolute immunity.

Report and Recommendation
Motion to Dismiss/Summary Judgment
*Williams v. Caruso*; 08-10044

While defendant Rachel Johnson may not have been an attorney, the parties here seem to agree that she functioned as a "prosecutor" with respect to plaintiff's parole violation hearing and therefore she is entitled to absolute immunity.

I.     Qualified Immunity

Defendants assert that the federal claims raised by plaintiff are barred by the doctrine of qualified immunity.  Qualified immunity shields government officials from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006).  The question of qualified immunity is a legal question for the court to resolve.  *Tucker v. City of Richmond*, 388 F.3d 216, 219 (6th Cir. 2004).

 The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A premise of the doctrine of qualified immunity is that the law is willing to accept reasonable mistakes made by public officials except those

that are "plainly incompetent or those who knowingly violate the law." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).

The Supreme Court had established a two part test in order to determine whether a qualified immunity was applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194 (2001).  The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. at 201.  If the first question was resolved in the affirmative then the court would decide "whether the right was clearly established." *Id*.  If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

Very recently, and after the parties had submitted their motions in this case, the Supreme Court revisited their decision in *Saucier* and concluded that mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808 (2009).  While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of

the test.  In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers.  Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."

Once the defense of qualified immunity is raised, plaintiff has the burden of demonstrating that the defendant is not entitled to qualified immunity.  *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006).  That burden includes the obligation to show that the right is clearly established.  *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004).  A defendant, on the other hand, has the burden to show that the challenged conduct was objectively reasonable in light of the law existing at the time of the events.  *Tucker*, 388 F.3d at 220.  While the facts are normally taken as alleged by the plaintiff, facts that absolutely contradict the record will not be considered as claimed by plaintiff.  *Marvin v. City of Taylor*, 509 F.3d 234, 249 (6th Cir. 2007).

With respect to plaintiff's claim of a due process violation based on the extension of his parole, plaintiff has not demonstrated he has a constitutional right that was violated.  A due process violation requires the deprivation of a liberty interest.  *Grinter v. Knight*, 532 F.3d 567, 573-75 (6th Cir. 2008).  A person has no liberty interest in parole under the Constitution.  *Board of Pardons v. Allen*, 482 U.S. 369 (1987).  Michigan law, which provides broad authority to the parole board, does not create a liberty interest in the granting of parole.  *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994).  It follows that, if there is no liberty interest in parole, there could be no liberty interest in extending parole, which has less impact on a person's liberty than parole itself.   Plaintiff has not demonstrated that he has any constitutional rights relating to the extension of parole or that such rights are clearly established.[10]

J.    Forty-five Day Limitation Period

It is not clear which defendants plaintiff accuses of violating what he claims is a constitutional right to a hearing on his parole revocation within 45 days of

---

[10] While not controlling with respect to question of a liberty interest in parole extension, the Michigan Supreme Court has determined that no hearing is necessary before parole can be extended by the Parole Board.  *Lane v. Michigan Department of Corrections*, 383 Mich. 50, 57 (1970) (quoting favorably from the defendant's brief which argued that an extension of parole does not put "conditional liberty ... in danger of being completely revoked.").

becoming "available" to the parole authorities.  In his pleadings, plaintiff states that the "defendants" violated this right without any further specification as to which defendants he is accusing of such conduct.  (Dkt. 54, affidavit, pp. 5-7). Based on the following analysis, the undersigned concludes that plaintiff had no such right based on the constitution and, additionally, that he waived any such rights that might have existed and, therefore, it would not matter who plaintiff accused of these acts.

The record demonstrates that plaintiff was taken into the custody of the parole authorities on June 20, 2006.  (Dkt. 45, p. 3).  State law requires that individuals accused of violating their parole are entitled to a hearing within 45 days of being "available."  June 20, 2006, was the first day plaintiff was "available."   Forty-five days from June 20, 2006, was August 4, 2006.  MCL 791.240a(3).  A revocation hearing was scheduled for August 1, 2006, but on July 26, 2006, before that hearing could be held, plaintiff met with his attorney, executed a waiver of the 45 day limitation, and requested an adjournment of the August 1, 2006, hearing.  (Dkt. 45, Ex. 7).  The waiver document included a statement that the revocation hearing would be rescheduled as soon as possible, but no specific future date was being promised.  A brief hearing took place on August 1, 2006, at which the ALJ conducting the hearing confirmed the

adjournment at plaintiff's request based on plaintiff's need for additional documents. The ALJ advised plaintiff and his attorney that the next hearing would be scheduled when plaintiff informed the ALJ that he was ready to go forward with the hearing.

The next hearing was held on November 14, 2006. At that time, the ALJ explained the circumstances of plaintiff's case, noted some irregularities in the case, including the issue regarding the extension of plaintiff's parole period, and advised the parties he did not have authority to address the extension issue. He invited the parties to provide some legal authority on the issue and adjourned the hearing until November 30, 2006, which was the next date that plaintiff's counsel was available. The November 30, 2006, hearing took place and the written opinion of the ALJ was issued on January 18, 2007, concluding that plaintiff had violated his parole by committing a new crime. (Dkt. 45, Ex. 8). The decision of the Parole Board, based on the findings of the ALJ, was issued on January 31, 2007, and mailed on February 20, 2007. (Dkt. 1, Ex. N).

While plaintiff may have a statutory right to a hearing within 45 days, a statutory right does not become a constitutional right inuring to the benefit of plaintiff, and actionable under § 1983. *Moore v. Hofbauer*, 144 F.Supp.2d 877, 881-82 (E.D. Mich. 2001). Based on constitutional standards, a revocation

hearing must be held within a "reasonable time" but not necessarily within 45 days. *Id.* Factors to be considered in determining whether a delay in holding a revocation hearing is unreasonable include:  (1) the length of the delay; (2) the reasons for the delay; (3) the alleged violator's attempts to assert the right to a timely hearing; and (4) prejudice to the alleged violator." *Id.* The length of time to complete the hearing in this case was a little over five months.  The hearing was delayed at the request of plaintiff for the purpose of allowing him to acquire additional documents.  In his present pleadings, while plaintiff claims that he was ready to proceed on August 1, 2006, his claim is belied by the statements made by both him and his attorney on August 1, 2006 and November 14, 2006.  Plaintiff has claimed no prejudice resulting from the scheduling of these hearings and none is apparent.  Based on these factors, the undersigned concludes that the revocation hearing was held within a reasonable period of time.  Additionally, the undersigned concludes that the written waiver signed by plaintiff on July 26, 2006, was a knowing waiver of plaintiff's right to have the hearing conducted within the 45 day period or any other reasonable period of time.

Based on the above, it is recommended that defendants' motion for summary judgment be granted on any claim that plaintiff may have based on an

alleged constitutional violation arising from the scheduling of his parole
revocation hearing.

### K.   Transfer for Treatment

Plaintiff alleges that, on February 28, 2007, he was involuntarily transferred
to the Riverside Correctional Facility for treatment of what he admits was a
nervous breakdown.  He claims that the transfer was without a hearing and he was
"forced" to take "intense treatment" at Riverside.  (Dkt. 12, pp. 6-7, ¶¶ 14-18; p.
27,  ¶¶ 67-68).  Although defendants acknowledge that such a transfer took place
they do not dispute plaintiff's characterization of the manner in which the transfer
took place, or the nature of the circumstances to which plaintiff was subjected
following the transfer.  (Dkt. 45, p. 5).  While defendants' response is not
necessarily viewed as an admission of plaintiff's allegation, in the absence of a
challenge to those allegations, they will be viewed in the light most favorable to
plaintiff.

A prisoner has no constitutional right to be incarcerated in a particular
facility or to be held in a specific security classification or to participate in any
rehabilitative program.  *Umani v. Caruso*, 2008 WL 2216283, *11 (E.D. Mich.
2008), citing, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (particular facility);
*Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (rehabilitative program).  Indeed,

as a general rule, "changes in the conditions of confinement having a substantial impact on the prisoner are not alone sufficient to invoke the protections of the Due Process Clause [a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him." *Vitek v. Jones, 445 U.S. 480, 493 (1980)* (internal quotation marks and citations omitted).

However, in the context of involuntary commitment to a mental institution, the Supreme Court "recognized that for the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty, and in consequence requires due process protection." *Simon v. Cook, 261 Fed.Appx. 873, 884 (6th Cir. 2008)*, quoting, *Vitek, 445 U.S. at 491-92* (internal quotation marks and citations omitted); *see also Noble v. Schmitt, 87 F.3d 157, 161 (6th Cir. 1996)* ("Involuntary commitment to a mental institution substantially restricts individual liberty in many respects."). The Supreme Court concluded "that a convicted felon also is entitled to the benefit of procedures appropriate in the circumstances before he is found to have a mental disease and transferred to a mental hospital." *Vitek, 445 U.S. at 493*. Thus, "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." *Id. at 493*. Based on these principles, the Supreme Court has held that a "State cannot constitutionally confine without more a nondangerous

individual who is capable of surviving safely in freedom by himself...." *Simon, 261 Fed.Appx. at 884*, quoting, *O'Connor v. Donaldson, 422 U.S. 563, 576 (1975)*. Thus, state laws have been interpreted to require a finding of dangerousness before an individual can be committed. *Simon, 261 Fed.Appx. at 884*, citing, *Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993)*.

The "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Simon, 261 Fed.Appx. at 884*, quoting, *Mathews v. Eldridge, 424 U.S. 319, 333 (1976)* (citations and internal quotation marks omitted). Due process "is flexible and calls for such procedural protections as the particular situation demands." *Simon, 261 Fed.Appx. at 884*, quoting, *Mathews, 424 U.S. at 333*. To determine the process due, courts generally look at three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Simon*, 261 Fed.Appx. at 885, quoting, *Mathews*, 424 U.S. at 333.  In *Vitek*, the

Supreme approved the lower court's requirement that the following minimum

procedures be followed before transferring a prisoner to a mental hospital:

> A.   Written notice to the prisoner that a transfer to a
>       mental hospital is being considered;
>
> B.   A hearing, sufficiently after the notice to permit
>       the prisoner to prepare, at which disclosure to the
>       prisoner is made of the evidence being relied upon
>       for the transfer and at which an opportunity to be
>       heard in person and to present documentary
>       evidence is given;
>
> C.   An opportunity at the hearing to present testimony
>       of witnesses by the defense and to confront and
>       cross-examine witnesses called by the state, except
>       upon a finding, not arbitrarily made, of good cause
>       for not permitting such presentation,
>       confrontation, or cross-examination;
>
> D.   An independent decisionmaker;
>
> E.   A written statement by the factfinder as to the
>       evidence relied on and the reasons for transferring
>       the inmate;
>
> F.   Availability of legal counsel, furnished by the
>       state, if the inmate is financially unable to furnish
>       his own; and
>
> G.   Effective and timely notice of all the foregoing
>       rights.

*Id.* at 494-495 (quotation marks omitted).  In this case, plaintiff has alleged an involuntary transfer to an institution for treatment without any hearing or process resembling the one described above.  Based on these allegations, plaintiff has stated a claim for a due process violation that is potentially actionable under § 1983 and it is recommended that, with respect to this claim, defendants' motion for either a dismissal under Rule 12(b)(6) or summary judgment under Rule 56 be denied.

## VI.    SUMMARY AND RECOMMENDATIONS

The following is a summary of the determinations resulting from defendants' motion for dismissal or for summary judgment:  (1) plaintiff's claim arising from the extension of parole in July of 2005 should be dismissed on summary judgment grounds because a § 1983 cause of action will not lie where he seeks to challenge the legitimacy of a parole violation that has not otherwise been invalidated and he still has the ability to do that in a habeas action under 28 U.S.C. § 2254; (2) if this claim is not dismissed on this ground, it should be dismissed on the basis of qualified immunity because plaintiff has not demonstrated that his constitutional rights were violated with respect to the extension of parole or, if any such rights exist, that those rights were clearly established; (3) that any cause of action regarding plaintiff's parole extension against defendants Rubitschun,

Sampson, Kasenow, and Rachel Johnson should be dismissed because those

defendants are entitled to absolute immunity; (4) that any cause of action

regarding plaintiff's parole extension or his transfer to an institution for treatment

without a hearing against the remaining defendants in this motion should be

dismissed based on lack of personal involvement in those claims; (5) that any

cause of action arising out of plaintiff's transfer for treatment without notice may

be a viable cause of action against the remaining defendants who are not a party to

this motion but that claim should be dismissed as to the defendants who are a party

to this motion; and (6) that any claim relating to plaintiff's right to a hearing

within 45 days be dismissed.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 10 days of service,

as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal. *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d

505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

Report and Recommendation
Motion to Dismiss/Summary Judgment
*Williams v. Caruso*; 08-10044

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any

objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 10 days after service of an

objection, the opposing party must file a concise response proportionate to the

objections in length and complexity.  The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that

any objections are without merit, it may rule without awaiting the response.

Date: March 17, 2009                        s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

Report and Recommendation
Motion to Dismiss/Summary Judgment
*Williams v. Caruso*; 08-10044

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>March 17, 2009</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Daniel J. Ferris, Dawn C.M. Jack, Patrick McLain, and Mark V. Schoen</u>, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>Edward Williams, 2424 W. Grand Boulevard, Detroit, MI 48208</u>.

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov

Report and Recommendation
Motion to Dismiss/Summary Judgment
*Williams v. Caruso*; 08-10044